# Account Agreement

## Financial Institution

BANCORPSOUTH BANK
120 Colony Crossing Way
Madison, MS 39110

## Account Holder

NETWORK-BALLISTIX LLC
216 CALHOUN DR
MADISON, MS 39110-4007

**Agreement Date:** December 23, 2019

### Replacement Agreement

This Account Agreement replaces all previous Agreements for the Accounts described.

### Important Account Opening Information

Federal law requires us to obtain sufficient information to verify your identity. You may be asked several questions and to provide one or more forms of identification to fulfill this requirement. In some instances we may use outside sources to confirm the information. The information you provide is protected by our privacy policy and federal law.

### Account(s) - Type, Number, Initial Deposit

- **E Business Checking** - Account Number: ███0090
- **Opened By:** Morgan Washington

### Ownership of Account

The ownership you have selected and intend is: **Limited Liability Company.**

### Signatures

Each of the undersigned certifies the accuracy of the information provided and authorizes the financial institution to investigate credit and employment history and obtain reports from consumer reporting agencies on them as individuals. Except as otherwise provided by law or other documents, each of the undersigned is authorized to make withdrawals from the account(s), provided the required number of signatures indicated above is satisfied. The undersigned personally and

**Exhibit  E**

Sales & Service v3.14

Account Agreement - MS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2018

2019122318.1.1.4753-N20180529Y

███0090 IM 01 SIGCARD YYY

02/2018
Page 1 of 2



as, or on behalf of, the account owner(s) agree to the terms and acknowledge receipt of copies of this document and the following: Terms and Conditions, Substitute Checks, Funds Availability and Common Features

**NETWORK BALLISTIX LLC**
*A Mississippi Limited Liability Company*

JOSEPH MAURY                                12-23-19
OWNER                                         Date

**NETWORK BALLISTIX LLC**
*A Mississippi Limited Liability Company*

GLYNN A KEGLEY                              12/23/19
~~PRESIDENT~~ CFO                            Date

## Backup Withholding Certifications

TIN: ▮▮▮▮0585

**Taxpayer Identification Number (TIN)** - The taxpayer identification number (TIN) shown above is my correct taxpayer identification number.

**Backup Withholding** - I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding. *(Strike out this statement if the IRS has notified you that you are subject to backup withholding.)*

**FATCA Code** - The FATCA code entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**I certify under penalties of perjury the statements made in this section and that I am a U.S. citizen or other U.S. person (as defined in the instructions).**

JOSEPH MAURY                                12-23-19
                                             Date

**Important Account Information For Our Our Valued Customer from**

**BANCORPSOUTH BANK**
**1 Mississippi Plaza**
**Tupelo, MS 38801**

**(662)844-1000**

# Terms & Conditions of Your Account

Contents

1. *Important Information About Procedures for Opening a New Account*
2. *Agreement*
3. *Liability*
4. *Deposits*
5. *Withdrawals*
6. *Ownership Of Account And Beneficiary Designation*
7. *Business, Organization and Association Accounts*
8. *Stop Payments*
9. *Telephone Transfers*
10. *Amendments and Termination*
11. *Notices*
12. *Statements*
13. *Account Transfer*
14. *Direct Deposits*
15. *Temporary Account Agreement*
16. *Setoff*
17. *Authorized Signer*
18. *Restrictive Legends or Indorsements*
19. *Payment Order of Items*
20. *Facsimile Signatures*
21. *Pledges*
22. *Power of Attorney*
23. *Stale-Dated Checks*
24. *FDIC Insurance*
25. *Indorsements*
26. *Unclaimed Property*
27. *Death or Incompetence*
28. *UTMA Accounts*
29. *Fiduciary Accounts*
30. *Cash Transaction Reporting*
31. *Backup Withholding/TIN Certification*
32. *Credit Verification*
33. *Lost, Destroyed, or Stolen Certified, Cashier's or Teller's Checks*
34. *Changing Account Products*
35. *Transactions by Mail*
36. *Legal Actions Affecting Your Account*
37. *Check Processing*
38. *Check Storage and Copies*
39. *Check Cashing*
40. *Truncation, Substitute Checks, and Other Check Images*
41. *Security*
42. *Remotely Created Checks*
43. *Telephonic Instructions*
44. *Monitoring and Recording Telephone Calls and Consent to Receive Communications*
45. *Claim of Loss*
46. *Early Withdrawal Penalties (and involuntary withdrawals)*
47. *Resolving Account Disputes*
48. *Subaccount Organization*
49. *Unlawful Internet Gambling Notice*
50. *Security Interest*
51. *Effect of Termination or Amendment*
52. *Governing Law; Process; Representatives*
53. *Indemnification By Fiduciary*
54. *Arbitration*
55. *Mandatory Dispute Resolution Agreement*
56. *Notice Procedures*
57. *ACH and Wire Transfers*
58. *Electronic Disclosures and Notices*
59. *Notice Regarding Inaccurate Information*
60. *International ACH Transactions*
61. *Notice of Negative Information*

Sales & Service v3.14

344

Terms & Conditions
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2016

2019010818.1.1.4753-N20180529Y

01/2018
Page 1 of 16

**1. Important Information About Procedures for Opening a New Account.** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth (for individuals), and other information that will allow us to identify you. We may also ask to see your driver's license (for individuals) or other identifying documents.

**2. Agreement.** This document, along with any other documents we give you pertaining to your account(s), is a contract that establishes rules which control your account(s) with us. Please read this carefully and retain it for future reference. If you sign the signature card or open or continue to use the account, you agree to these rules. You will receive a separate schedule of rates, qualifying balances, and fees if they are not included in this document. If you have any questions, please call us.

This agreement is subject to applicable federal laws, the laws of the state of Mississippi and other applicable rules such as the operating letters of the Federal Reserve Banks and payment processing rules (except to the extent that this agreement can and does vary such rules or laws). The body of state and federal law that governs our relationship with you, however, is too large and complex to be reproduced here. The purpose of this document is to:

1. summarize some laws that apply to common transactions;
2. establish rules to cover transactions or events which the law does not regulate;
3. establish rules for certain transactions or events which the law regulates but permits variation by agreement; and
4. give you disclosures of some of our policies to which you may be entitled or in which you may be interested.

If any provision of this document is found to be unenforceable according to its terms, all remaining provisions will continue in full force and effect. We may permit some variations from our standard agreement, but we must agree to any variation in writing either on the signature card for your account or in some other document. Nothing in this document is intended to vary our duty to act in good faith and with ordinary care when required by law.

As used in this document the words *"we"*, *"our"*, and *"us"* mean the financial institution and the words *"you"* and *"your"* mean the account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the account. However, this agreement does not intend, and the terms *"you"* and *"your"* should not be interpreted, to expand an individual's responsibility for an organization's liability. If this account is owned by a corporation, partnership or other organization, individual liability is determined by the laws generally applicable to that type of organization. The headings in this document are for convenience or reference only and will not govern the interpretation of the provisions. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular.

**3. Liability.** You agree, for yourself (and the person or entity you represent if you sign as a representative of another) to the terms of this account and the schedule of charges. You authorize us to deduct these charges, without notice to you, directly from the account balance as accrued. You will pay any additional reasonable charges for services you request which are not covered by this agreement.

Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account. This liability is due immediately, and can be deducted directly from the account balance whenever sufficient funds are available. You have no right to defer payment of this liability, and you are liable regardless of whether you signed the item or benefited from the charge or overdraft.

You will be liable for our costs as well as for our reasonable attorneys' fees, to the extent permitted by law, whether incurred as a result of collection or in any other dispute involving your account. This includes, but is not limited to, disputes between you and another joint owner; you and an authorized signer or similar party; or a third party claiming an interest in your account. This also includes any action that you or a third party takes regarding the account that causes us, in good faith, to seek the advice of an attorney, whether or not we become involved in the dispute. All costs and attorneys' fees can be deducted from your account when they are incurred, without notice to you.

**4. Deposits.** We will give only provisional credit until collection is final for any items, other than cash, we accept for deposit (including items drawn "on us"). Before settlement of any item becomes final, we act only as your agent, regardless of the form of indorsement or lack of indorsement on the item and even though we provide you provisional credit for the item. We may reverse any provisional credit for items that are lost, stolen, or returned. Unless prohibited by law, we also reserve the right to charge back to your account the amount of any item deposited to your account or cashed for you which was initially paid by the payor bank and which is later returned to us due to an allegedly forged,

Terms & Conditions
Bankers Systems™ VMP®                                                                                                      01/2018
Wolters Kluwer Financial Services © 2016                     2019010818.1.1.4753-N20180529Y                     Page 2 of 16

unauthorized or missing indorsement, claim of alteration, encoding error or other problem which in our judgment justifies reversal of credit. You authorize us to attempt to collect previously returned items without giving you notice, and in attempting to collect we may permit the payor bank to hold an item beyond the midnight deadline. Actual credit for deposits of, or payable in, foreign currency will be at the exchange rate in effect on final collection in U.S. dollars. We are not responsible for transactions by mail or outside depository until we actually record them. If you deliver a deposit to us and you will not be present when the deposit is counted, you must provide us an itemized list of the deposit (deposit slip). To process the deposit, we will verify and record the deposit, and credit the deposit to the account. If there are any discrepancies between the amounts shown on the itemized list of the deposit and the amount we determine to be the actual deposit, we will notify you of the discrepancy. You will be entitled to credit only for the actual deposit as determined by us, regardless of what is stated on the itemized deposit slip. We will treat and record all transactions received after our "daily cutoff time" on a business day we are open, or received on a day we are not open for business, as if initiated on the next business day that we are open. At our option, we may take an item for collection rather than for deposit. If we accept a third-party check or draft for deposit, we may require any third-party indorsers to verify or guarantee their indorsements, or indorse in our presence.

**5. Withdrawals.** Generally - Unless clearly indicated otherwise on the account records, any of you, acting alone, who signs to open the account or has authority to make withdrawals may withdraw or transfer all or any part of the account balance at any time. Each of you (until we receive written notice to the contrary) authorizes each other person who signs or has authority to make withdrawals to indorse any item payable to you or your order for deposit to this account or any other transaction with us. Postdated checks - A postdated check is one which bears a date later than the date on which the check is written. We may properly pay and charge your account for a postdated check even though payment was made before the date of the check. Checks and withdrawal rules - If you do not purchase your check blanks from us, you must be certain that we approve the check blanks you purchase. We may refuse any withdrawal or transfer request which you attempt on forms not approved by us or by any method we do not specifically permit. We may refuse any withdrawal or transfer request which is greater in number than the frequency permitted, or which is for an amount greater or less than any withdrawal limitations. We will use the date the transaction is completed by us (as opposed to the date you initiate it) to apply the frequency limitations. In addition, we may place limitations on the account until your identity is verified. Even if we honor a nonconforming request, we are not required to do so later. If you violate the stated transaction limitations (if any), in our discretion we may close your account or reclassify it as a transaction account. If we reclassify your account, your account will be subject to the fees and earnings rules of the new account classification. If we are presented with an item drawn against your account that would be a "substitute check," as defined by law, but for an error or defect in the item introduced in the substitute check creation process, you agree that we may pay such item. See the funds availability policy disclosure for information about when you can withdraw funds you deposit. For those accounts to which our funds availability policy disclosure does not apply, you can ask us when you make a deposit when those funds will be available for withdrawal. We may determine the amount of available funds in your account for the purpose of deciding whether to return an item for insufficient funds at any time between the time we receive the item and when we return the item or send a notice in lieu of return. We need only make one determination, but if we choose to make a subsequent determination, the account balance at the subsequent time will determine whether there are insufficient available funds. Overdrafts - You understand that we may, at our discretion, honor withdrawal requests that overdraw your account. However, the fact that we may honor withdrawal requests that overdraw the account balance does not obligate us to do so later. So you can NOT rely on us to pay overdrafts on your account regardless of how frequently or under what circumstances we have paid overdrafts on your account in the past. We can change our practice of paying overdrafts on your account without notice to you. You can ask us if we have other account services that might be available to you where we commit to paying overdrafts under certain circumstances, such as an overdraft protection line-of-credit or a plan to sweep funds from another account you have with us. You agree that we may charge fees for overdrafts. For consumer accounts, we will not charge fees for overdrafts caused by ATM withdrawals or one-time debit card transactions if you have not opted-in to that service. We may use subsequent deposits, including direct deposits of social security or other government benefits, to cover such overdrafts and overdraft fees. Please review the additional disclosure titled "About Overdrafts". A temporary debit authorization hold affects your account balance - On debit card purchases, merchants may request a temporary hold on your account for a specified sum of money, which may be more than the actual amount of your purchase. When this happens, our processing system cannot determine that the amount of the hold exceeds the actual amount of your purchase. This temporary hold, and the amount charged to your account, will eventually be adjusted to the actual amount of your purchase, but it may be up to three days before the adjustment is made. Until the adjustment is made, the amount of funds in your account available for other transactions will be reduced by the amount of the temporary hold. Multiple signatures, electronic check conversion, and similar transactions - An electronic check conversion transaction is a transaction where a check or similar item is converted into an electronic fund transfer as

defined in the Electronic Fund Transfers regulation. In these types of transactions the check or similar item is either removed from circulation (truncated) or given back to you. As a result, we have no opportunity to review the check to examine the signatures on the item. You agree that, as to these or any items as to which we have no opportunity to examine the signatures, you waive any requirement of multiple signatures. Notice of withdrawal - We reserve the right to require not less than 7 days' notice in writing before each withdrawal from an interest-bearing account other than a time deposit, or from any other savings account as defined by Regulation D. (The law requires us to reserve this right, but it is not our general policy to use it.) Withdrawals from a time account prior to maturity or prior to any notice period may be restricted and may be subject to penalty. See your notice of penalty for early withdrawal.

**6. Ownership Of Account And Beneficiary Designation.** You intend these rules to apply to the account depending on the form of ownership and beneficiary designation, if any, specified on the signature page. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds. Single Party Account - is owned by one person. Multiple Party Account - is owned by two or more persons jointly with right of survivorship and not as tenants in common, regardless of the conjunction ("or", "and") used between the depositors' names. Each of you expressly agrees that the account is not owned as a tenancy by the entireties. Each of you intends that upon your death the balance in the account (subject to any previous pledge to which we have consented) will vest in and belong to the survivor(s) as the separate property and estate of such survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common. Transactions on Multiple Party Accounts do not require the signatures of all account owners to transact on the account. Instead, any one account owner or authorized signer may transact on the account to the exclusion of the other(s), and each of you authorize each other of you to do so without further consent. If this Agreement is governed by the laws of the state of Louisiana, the owners of a Multiple Party Account are co-owners of the account, and all or any part of any deposit may be paid to any one of you, whether any other of you is living or not, and any such payment to any of you shall constitute receipt and acquittance and shall fully release and discharge us from the claims of any person to funds of the deceased depositor for the payment made. Account with Minor as an owner - If this is a Multiple Party Account and one or more of the account owners is a minor, all adult owners of the account jointly and severally agree that all transactions made on the account by any such minor shall be deemed to have been made by such adult owners, regardless of whether any such transaction may be void or voidable. EACH SUCH ADULT OWNER AGREES TO INDEMNIFY US AND HOLD US HARMLESS FROM ANY LOSS WE INCUR IN CONNECTION WITH ANY TRANSACTION MADE BY ANY SUCH MINOR. Pay-On Death Account- Pay-on-death beneficiaries acquire the right to withdraw only if: (1) all persons creating the account die, (2) the beneficiary is then living, and (3) we are not otherwise required by law to make payment to some other person. If two or more beneficiaries are named and survive the death of all persons creating the account, such beneficiaries will own the account and may transact on it according to the Multiple Party Account rules stated above unless otherwise provided by law. Any one account owner or authorized signer may: (1) change beneficiaries, (2) change account types, and (3) withdraw all or part of the deposit at any time. If two or more of you create such a Pay-On-Death Account, you own the account according to the Multiple Party Account rules stated above until the last of you dies.

**7. Business, Organization and Association Accounts.** Earnings in the form of interest, dividends, or credits will be paid only on collected funds, unless otherwise provided by law or our policy. You represent that you have the authority to open and conduct business on this account on behalf of the entity. We may require the governing body of the entity opening the account to give us a separate authorization telling us who is authorized to act on its behalf. We will honor the authorization until we actually receive written notice of a change from the governing body of the entity.

**8. Stop Payments.** A stop-payment order must be given in the manner required by law and must be received in time to give us a reasonable opportunity to act on it before our stop-payment cut off time. Our stop-payment cut off time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop-payment are provided by law. A stop-payment order must precisely identify the number, date and amount of the item, and the payee. We will honor a stop-payment request by the person who signed the particular item, and, by any other person, even though such other person did not sign the item, if such other person has an equal or greater right to withdraw from the account than the person who signed the item in question. A release of the stop-payment request may be made only by the person who initiated the stop-payment.

**9. Telephone Transfers.** A telephone transfer of funds from this account to another account with us, if otherwise arranged for or permitted, may be made by the same persons and under the same conditions generally applicable to withdrawals made in writing. Unless a different limitation is disclosed in writing, we restrict the number of transfers from a savings account to another account or to third parties, to a maximum of six per month (less the number of *"preauthorized transfers"* during the month). Other account transfer restrictions may be described elsewhere.

**10. Amendments and Termination.** We may change any term of this agreement. Rules governing changes in interest rates are provided separately in the Truth-in-Savings disclosure or in another document. For other changes, we will give you reasonable notice in writing or by any other method permitted by law. We may also close this account at any time upon reasonable notice to you and tender of the account balance personally or by mail. Items presented for payment after the account is closed may be dishonored. When you close your account, you are responsible for leaving enough money in the account to cover any outstanding items to be paid from the account. Reasonable notice depends on the circumstances, and in some cases such as when we cannot verify your identity or we suspect fraud, it might be reasonable for us to give you notice after the change or account closure becomes effective. For instance, if we suspect fraudulent activity with respect to your account, we might immediately freeze or close your account and then give you notice. If we have notified you of a change in any term of your account and you continue to have your account after the effective date of the change, you have agreed to the new term(s).

**11. Notices.** Any written notice you give us is effective when we actually receive it, and it must be given to us according to the specific delivery instructions provided elsewhere, if any. We must receive it in time to have a reasonable opportunity to act on it. If the notice is regarding a check or other item, you must give us sufficient information to be able to identify the check or item, including the precise check or item number, amount, date and payee. Written notice we give you is effective when it is deposited in the United States Mail with proper postage and addressed to your mailing address we have on file. Notice to any of you is notice to all of you.

**12. Statements.**

*Your Duty to Report Unauthorized Signatures, Alterations and Forgeries.*

You must examine your statement of account with reasonable promptness. If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must promptly notify us of the relevant facts. As between you and us, if you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we substantially contributed to the loss). The loss could be not only with respect to items on the statement but other items with unauthorized signatures or alterations by the same wrongdoer.

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you.

You further agree that if you fail to report any unauthorized signatures, alterations, or forgeries in your account within 60 days of when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours. This 60-day limitation is without regard to whether we used ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section.

*Your Duty to Report Other Errors.*

In addition to your duty to review your statements for unauthorized signatures, alterations and forgeries, you agree to examine your statement with reasonable promptness for any other error - such as an encoding error. In addition, if you receive or we make available either your items or images of your items, you must examine them for any unauthorized or missing indorsements or any other problems. You agree that the time you have to examine your statement and items and report to us will depend on the circumstances. However, this time period shall not exceed 60 days. Failure to examine your statement and items and report any errors to us within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any errors on items identified in that statement and as between you and us the loss will be entirely yours.

*Errors Relating to Electronic Fund Transfers or Substitute Checks (For Consumer Accounts Only).*

For information on errors relating to electronic fund transfers (e.g., computer, debit card or ATM transactions) refer to your Electronic Fund Transfers disclosure and the sections on consumer liability and error resolution. For information on errors relating to a substitute check you received, refer to your disclosure entitled Substitute Checks and Your Rights.

**13. Account Transfer.** This account may not be transferred or assigned without our prior written consent.

**14. Direct Deposits.** If we are required for any reason to reimburse the federal government for all or any portion of a benefit payment that was directly deposited into your account, you authorize us to deduct the amount of our liability to the

federal government from the account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**15. Temporary Account Agreement.** If the account documentation indicates that this is a temporary account agreement, each person who signs to open the account or has authority to make withdrawals (except as indicated to the contrary) may transact business on this account. However, we may at some time in the future restrict or prohibit further use of this account if you fail to comply with the requirements we have imposed within a reasonable time.

**16. Setoff.** We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt any of you owe us now or in the future. If this account is owned by one or more of you as individuals, we may set off any funds in the account against a due and payable debt a partnership owes us now or in the future, to the extent of your liability as a partner for the partnership debt. If your debt arises from a promissory note, then the amount of the due and payable debt will be the full amount we have demanded, as entitled under the terms of the note, and this amount may include any portion of the balance for which we have properly accelerated the due date.

This right of setoff does not apply to this account if prohibited by law. For example, the right of setoff does not apply to this account if:

1. it is an Individual Retirement Account or similar tax-deferred retirement account, or
2. the debt is created by a consumer credit transaction under a credit card plan (but this does not affect our rights under any consensual security interest), or
3. the debtor's right of withdrawal only arises in a representative capacity, or
4. setoff is prohibited by the *Military Lending Act* or its implementing regulations.

We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our right of setoff.

**17. Authorized Signer.** A single individual is the owner. The authorized signer is merely designated to conduct transactions on the owner's behalf. The owner does not give up any rights to act on the account, and the authorized signer may not in any manner affect the rights of the owner or beneficiaries, if any, other than by withdrawing funds from the account. The owner is responsible for any transactions of the authorized signer. We undertake no obligation to monitor transactions to determine that they are on the owner's behalf. The owner may terminate the authorization at any time, and the authorization is automatically terminated by the death of the owner. However, we may continue to honor the transactions of the authorized signer until: (a) we have received written notice or have actual knowledge of the termination of authority, and (b) we have a reasonable opportunity to act on that notice or knowledge. We may refuse to accept the designation of an authorized signer.

**18. Restrictive Legends or Indorsements.** The automated processing of the large volume of checks we receive prevents us from inspecting or looking for restrictive legends, restrictive indorsements or other special instructions on every check. Examples of restrictive legends placed on checks are "must be presented within 90 days" or "not valid for more than $1,000.00." The payee's signature accompanied by the words "for deposit only" is an example of a restrictive indorsement. For this reason, we are not required to honor any restrictive legend or indorsement or other special instruction placed on checks you write unless we have agreed in writing to the restriction or instruction. Unless we have agreed in writing, we are not responsible for any losses, claims, damages, or expenses that result from your placement of these restrictions or instructions on your checks.

**19. Payment Order of Items.** The order in which items are paid is important if there is not enough money in your account to pay all of the items that are presented. The payment order can affect the number of items overdrawn or returned unpaid and the amount of the fees you may have to pay. To assist you in managing your account, we are providing you with the following information regarding how we process those items.

Deposits and credits to the account will be processed first. Any deposits or credits that are placed on hold will be processed next. After deposits and credits are credited to the account, items and orders are grouped in the following categories and then processed in the following order: (1) Wire transfers, ATM withdrawals, cashed checks and transactions initiated by the Bank (other than Bank fees), from lowest amount to highest amount; (2) Debit card transactions, from lowest amount to highest amount; (3) Checks, automated clearing house (ACH) transactions, and other withdrawals from lowest amount to highest amount; and then (4) Bank fees, from lowest amount to highest amount. If more than one item or order is presented for payment against the account on the same day and the available balance of the account is insufficient to pay them all, the Bank may pay any of them in any order the Bank chooses, even if the order the Bank chooses results in greater insufficient funds fees than if the Bank had chosen to pay them in some other

order or had chosen not to pay them. The Bank's payment of any item or order in overdraft does not create any obligation for the Bank to pay any other item or order in overdraft in the future, and the customer agrees that no course of dealing regarding the payment of items or orders in overdraft will be created between the Bank and the customer. In the event the account is overdrawn, the Bank reserves the right to change the categories and the processing order set forth above without notification to the customer. The Bank may also choose to first pay items and orders which are payable to the Bank or the Bank's affiliates.

If a check, item or transaction is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item for insufficient funds (NSF). We will not charge you a fee for paying an overdraft of an ATM or everyday debit card transaction if this is a consumer account and you have not opted-in to that service. The amounts of the overdraft and NSF fees are disclosed elsewhere, as are your rights to opt in to overdraft services for ATM and everyday debit card transactions, if applicable. We encourage you to make careful records and practice good account management. This will help you to avoid creating items without sufficient funds and potentially incurring the resulting fees.

**20. Facsimile Signatures.** You authorize us, at any time, to charge you for all checks, drafts, or other orders or transactions, for the payment of money, that are drawn on us by facsimile signature. You give us this authority regardless of by whom or by what means the facsimile signature(s) may have been affixed so long as they resemble the facsimile signature specimen filed with us, and contain the required number of signatures for this purpose. You must notify us at once if you suspect that your facsimile signature is being or has been misused.

**21. Pledges.** Each owner of this account may pledge all or any part of the funds in it for any purpose to which we agree. Any pledge of this account must first be satisfied before the rights of any surviving account owner or account beneficiary become effective.

**22. Power of Attorney.** You may wish to appoint an agent to conduct transactions on your behalf. (We, however, have no duty or agreement whatsoever to monitor or insure that the acts of the agent are for your benefit.) This may be done by allowing your agent to sign in that capacity on the signature card or by separate form, such as a power of attorney. A power of attorney continues until your death or the death of the person given the power. If the power of attorney is not durable, it is revoked when you become incompetent. We may continue to honor the transactions of the agent until: (a) we have received written notice or have actual knowledge of the termination of the authority or the death of an owner, and (b) we have had a reasonable opportunity to act on that notice or knowledge. You agree not to hold us responsible for any loss or damage you may incur as a result of our following instructions given by an agent acting under a valid power of attorney.

**23. Stale-Dated Checks.** We are not obligated to, but may at our option, pay a check, other than a certified check, presented for payment more than six months after its date. If you do not want us to pay a stale-dated check, you must place a stop-payment order on the check in the manner we have described elsewhere.

**24. FDIC Insurance.** Funds in your account(s) with us are insured by the Federal Deposit Insurance Corporation (FDIC) and backed by the full faith and credit of the United States. The amount of insurance coverage you have depends on the number of accounts you have with us that are of different *"ownership"*. An individual account is one unique form of ownership; a joint account, a pay-on-death account, and a self directed qualified retirement account (e.g., an IRA) are examples of some of the others. Deposit insurance for a person's self directed qualified retirement account is up to $250,000. (An IRA is a self directed qualified retirement account as is any account where the owner decides where and how to invest the balance.) Funds are insured to $250,000 per depositor for the total of funds combined in all of your other insured accounts with us. If you want a more detailed explanation or additional information, you may ask us or contact the FDIC. You can also visit the FDIC website at *www.fdic.gov* and click on the Deposit Insurance link. The link includes detailed contact information as well as a deposit insurance estimator.

**25. Indorsements.** We may accept for deposit any item payable to you or your order, even if they are not indorsed by you. We may give cash back to any one of you. We may supply any missing indorsement(s) for any item we accept for deposit or collection, and you warrant that all indorsements are genuine.

To ensure that your check or share draft is processed without delay, you must indorse it (sign it on the back) in a specific area. Your entire indorsement (whether a signature or a stamp) along with any other indorsement information (e.g. additional indorsements, ID information, driver's license number, etc.) must fall within 1 1/2" of the "trailing edge" of a check. Indorsements must be made in blue or black ink, so that they are readable by automated check processing equipment.

Sales & Service v3.14

344

Terms & Conditions
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2016

2019010818.1.1.4753-N20180529Y

01/2018
Page 7 of 16

As you look at the front of a check, the "trailing edge" is the left edge. When you flip the check over, be sure to keep all indorsement information within 1 1/2" of that edge.



It is important that you confine the indorsement information to this area since the remaining blank space will be used by others in the processing of the check to place additional needed indorsements and information. You agree that you will indemnify, defend, and hold us harmless for any loss, liability, damage or expense that occurs because your indorsement, another indorsement or information you have printed on the back of the check obscures our indorsement.

These indorsement guidelines apply to both personal and business checks.

**26. Unclaimed Property.** The law establishes procedures under which unclaimed property must be surrendered to the state. (We may have our own rules regarding dormant accounts, and if we charge a fee for dormant accounts it will be disclosed to you elsewhere.) Generally, the funds in your account are considered unclaimed if you have not had any activity or communication with us regarding your account over a period of years. Ask us if you want further information about the period of time or type of activity that will prevent your account from being unclaimed. If your funds are surrendered to the state, you may be able to reclaim them, but your claim must be presented to the state. Once your funds are surrendered, we no longer have any liability or responsibility with respect to the funds.

**27. Death or Incompetence.** You agree to notify us promptly if any person with a right to withdraw funds from your account(s) dies or is adjudicated (determined by the appropriate official) incompetent. We may continue to honor your checks, items, and instructions until: (a) we know of your death or adjudication of incompetence, and (b) we have had a reasonable opportunity to act on that knowledge. You agree that we may pay or certify checks drawn on or before the date of death or adjudication of incompetence for up to ten (10) days after your death or adjudication of incompetence unless ordered to stop payment by someone claiming an interest in the account.

**28. UTMA Accounts.** Under the *Uniform Transfers to Minors Act*, the funds in the account are owned by the child who has unconditional use of the account when he or she reaches the age of majority. Before that time, the account may be accessed only by the custodian (or successor custodian), and the funds must be used for the benefit of the child. We, however, have no duty or agreement whatsoever to monitor or insure that the acts of the custodian (or successor custodian) are for the child's benefit. We are not responsible to monitor age or eligibility for an UTMA account, even though our records may include the minor's date of birth. It is the custodian's responsibility to properly distribute the funds in the account upon the minor's death or attainment of the age of majority. For this type of account, the child's SSN/TIN is used for the Backup Withholding Certification.

**29. Fiduciary Accounts.** Accounts may be opened by a person acting in a fiduciary capacity. A fiduciary is someone who is appointed to act on behalf of and for the benefit of another. We are not responsible for the actions of a fiduciary, including the misuse of funds. This account may be opened and maintained by a person or persons named as a trustee under written trust agreement, or as executors, administrators, guardians or conservators under court orders, or for representative payee capacity. If there is more than one Fiduciary, they shall be deemed to have independent transaction authority on the account. You understand that by merely opening such an account, we are not acting in the capacity of a trustee in connection with the trust nor do we undertake any obligation to monitor or enforce the terms of the trust or letters. In the event of the appointment and qualification of any successor Fiduciary the Bank may require such Successor Fiduciary to deliver to the Bank an affidavit of succession or other document acceptable to the Bank certifying to the bank

Sales & Service v3.14

Terms & Conditions
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2016                   2019010818.1.1.4753-N20180529Y

344

01/2018
Page 8 of 16

that such person is the duly appointed, qualified, and serving Successor Fiduciary, and the Bank shall be entitled to rely thereon without further inquiry and shall be fully protected in relying on such. Notwithstanding the lack of any duty of the Bank so to further inquire, the Bank may nevertheless make such further inquiry as to the identity and qualification of such Successor Fiduciary as it deems appropriate in its sole discretion, and by further inquiring, the Bank shall not be deemed to have assumed any duty. The Bank may additionally require such Successor to execute and deliver anew this Certification or such revised or superseded version thereof as Bank may then utilize. Each Fiduciary and Successor Fiduciary agrees to give prompt notice to the Bank in the event that any Fiduciary or Successor Fiduciary resigns or is removed or if any additional Fiduciary is appointed or becomes empowered to act as Fiduciary for the Trust.

**30. Cash Transaction Reporting.** To help law enforcement agencies detect illegal activities, the law requires all financial institutions to gather and report information on some types of cash transactions. If the information we need to complete the report is not provided, we are required to refuse to handle the transaction. If you have any questions regarding these rules, please contact your local Internal Revenue Service office.

**31. Backup Withholding/TIN Certification.** Federal tax law requires us to report interest payments we make to you of $10 or more in a year, and to include your taxpayer identification number (TIN) on the report (the taxpayer identification number is your social security number if you are an individual). Interest includes dividends, interest and bonus payments for purposes of this rule. Therefore, we require you to provide us with your TIN and to certify that it is correct. In some circumstances, federal law requires us to withhold and pay to the IRS a percentage of the interest that is earned on funds in your accounts. This is known as backup withholding. We will not have to withhold interest payments when you open your account if you certify your TIN and certify that you are not subject to backup withholding due to underreporting of interest. (There are special rules if you do not have a TIN but have applied for one, if you are a foreign person, or if you are exempt from the reporting requirements.) We may subsequently be required to begin backup withholding if the IRS informs us that you supplied an incorrect TIN or that you underreported your interest income.

**32. Credit Verification.** You agree that we may verify credit and employment history by any necessary means, including preparation of a credit report by a credit reporting agency.

**33. Lost, Destroyed, or Stolen Certified, Cashier's or Teller's Checks.** Under some circumstances you may be able to assert a claim for the amount of a lost, destroyed, or stolen certified, cashier's or teller's check. To assert the claim: (a) you must be the remitter (or drawer of a certified check) or payee of the check, (b) we must receive notice from you describing the check with reasonable certainty and asking for payment of the amount of the check, (c) we must receive the notice in time for us to have a reasonable opportunity to act on it, and (d) you must give us a declaration (in a form we require) of your loss with respect to the check. You can ask us for a declaration form. Even if all of these conditions are met, your claim may not be immediately enforceable. We may pay the check until the ninetieth day after the date of the check (or date of acceptance of a certified check). Therefore, your claim is not enforceable until the ninetieth day after the date of the check or date of acceptance, and the conditions listed above have been met. If we have not already paid the check, on the day your claim is enforceable we become obligated to pay you the amount of the check. We will pay you in cash or issue another certified check.

At our option, we may pay you the amount of the check before your claim becomes enforceable. However, we will require you to agree to indemnify us for any losses we might suffer. This means that if the check is presented after we pay your claim, and we pay the check, you are responsible to cover our losses. We may require you to provide a surety bond to assure that you can pay us if we suffer a loss.

**34. Changing Account Products.** We may change your account to another product offered by us at any time by giving you notice that your account will be changed to another product on a specified date. If your account is a time account, the change will not occur before the next maturity date of your account. If you do not close your account before the date specified in the notice, we may change your account to that other product on the date specified in the notice.

**35. Transactions by Mail.** You may deposit checks (including share drafts) by mail. You should indorse the check being sent through the mail with the words "For Deposit Only" and should include your correct account number underneath to ensure the check is credited to the correct account. You should use the pre-encoded checking deposit slips found behind your checks in your checkbook. If you do not use your deposit slip or provide us with instructions indicating how or where the check should be credited, we may apply it to any account or any loan balance you have with us or we may return the check to you. Receipts for such transactions will be mailed to you only if a self-addressed stamped envelope is provided. Following your deposit, examine your statement carefully or call us to ensure that we received the item. Do not send cash through the mail for deposit.

Sales & Service v3.14

Terms & Conditions
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2016

2019010818.1.1.4753-N20180529Y

344

01/2018
Page 9 of 16

**36. Legal Actions Affecting Your Account.** If we are served with a subpoena, restraining order, writ of attachment or execution, levy, garnishment, search warrant, or similar order relating to your account (termed legal action in this section), we will comply with that legal action. Or, in our discretion, we may freeze the assets in the account and not allow any payments out of the account until a final court determination regarding the legal action. We may do these things even if the legal action involves less than all of you. In these cases, we will not have any liability to you if there are insufficient funds to pay your items because we have withdrawn funds from your account or in any way restricted access to your funds in accordance with the legal action. Any fees or expenses we incur in responding to any legal action (including, without limitation, attorneys' fees and our internal expenses) may be charged against your account. The list of fees applicable to your account(s) provided elsewhere may specify additional fees that we may charge for certain legal actions.

**37. Check Processing.** We process items mechanically by relying solely on the information encoded in magnetic ink along the bottom of the items. This means that we do not individually examine all of your items to determine if the item is properly completed, signed and indorsed or to determine if it contains any information other than what is encoded in magnetic ink. You agree that we have exercised ordinary care if our automated processing is consistent with general banking practice, even though we do not inspect each item. Because we do not inspect each item, if you write a check to multiple payees, we can properly pay the check regardless of the number of indorsements unless you notify us in writing that the check requires multiple indorsements. We must receive the notice in time for us to have a reasonable opportunity to act on it, and you must tell us the precise date of the check, amount, check number and payee. We are not responsible for any unauthorized signature or alteration that would not be identified by a reasonable inspection of the item. Using an automated process helps us keep costs down for you and all account holders.

**38. Check Storage and Copies.** You agree that you will not receive your canceled checks. We will store your canceled checks or copies of them for a reasonable retention period. You may request copies from us in the manner we require.

**39. Check Cashing.** We may charge a fee for anyone that does not have an account with us who is cashing a check, draft or other instrument written on your account. We may also require reasonable identification to cash such a check, draft or other instrument. We can decide what identification is reasonable under the circumstances and such identification may be documentary or physical and may include collecting a thumbprint or fingerprint.

**40. Truncation, Substitute Checks, and Other Check Images.** If you truncate an original check and create a substitute check, or other paper or electronic image of the original check, you warrant that no one will be asked to make payment on the original check, a substitute check or any other electronic or paper image, if the payment obligation relating to the original check has already been paid. You also warrant that any substitute check you create conforms to the legal requirements and generally accepted specifications for substitute checks. You agree to retain the original check in conformance with our internal policy for retaining original checks. You agree to indemnify us for any loss we may incur as a result of any truncated check transaction you initiate. We can refuse to accept substitute checks that have not previously been warranted by a bank or other financial institution in conformance with the *Check 21 Act*. Unless specifically stated in a separate agreement between you and us, we do not have to accept any other electronic or paper image of an original check.

**41. Security.** It is your responsibility to protect the account numbers and electronic access devices (e.g., an ATM card) we provide you for your account(s). Do not discuss, compare, or share information about your account number(s) with anyone unless you are willing to give them full use of your money. An account number can be used by thieves to issue an electronic debit or to encode your number on a false demand draft which looks like and functions like an authorized check. If you furnish your access device and grant actual authority to make transfers to another person (a family member or coworker, for example) who then exceeds that authority, you are liable for the transfers unless we have been notified that transfers by that person are no longer authorized.

Your account number can also be used to electronically remove money from your account, and payment can be made from your account even though you did not contact us directly and order the payment.

You must also take precaution in safeguarding your blank checks. Notify us at once if you believe your checks have been lost or stolen. As between you and us, if you are negligent in safeguarding your checks, you must bear the loss entirely yourself or share the loss with us (we may have to share some of the loss if we failed to use ordinary care and if we substantially contributed to the loss).

Except for consumer electronic funds transfers subject to Regulation E, you agree that if we offer you services appropriate for your account to help identify and limit fraud or other unauthorized transactions against your account, such as positive pay or commercially reasonable security procedures, and you reject those services, you will be responsible for any fraudulent or unauthorized transactions which could have been prevented by the services we offered, unless we acted in bad faith or to the extent our negligence contributed to the loss. If we offered you a commercially reasonable security procedure which you reject, you agree that you are responsible for any payment order, whether authorized or not, that we accept in compliance with an alternative security procedure that you have selected.

**42. Remotely Created Checks.** Like any standard check or draft, a remotely created check (sometimes called a telecheck, preauthorized draft or demand draft) is a check or draft that can be used to withdraw money from an account. Unlike a typical check or draft, however, a remotely created check is not issued by the paying bank and does not contain the signature of the account owner (or a signature purported to be the signature of the account owner). In place of a signature, the check usually has a statement that the owner authorized the check or has the owner's name typed or printed on the signature line.

You warrant and agree to the following for every remotely created check we receive from you for deposit or collection:
1. you have received express and verifiable authorization to create the check in the amount and to the payee that appears on the check;
2. you will maintain proof of the authorization for at least 2 years from the date of the authorization, and supply us the proof if we ask; and
3. if a check is returned you owe us the amount of the check, regardless of when the check is returned.

We may take funds from your account to pay the amount you owe us, and if there are insufficient funds in your account, you still owe us the remaining balance.

**43. Telephonic Instructions.** Unless required by law or we have agreed otherwise in writing, we are not required to act upon instructions you give us via facsimile transmission or leave by voice mail or on a telephone answering machine.

**44. Monitoring and Recording Telephone Calls and Consent to Receive Communications.** We may monitor or record phone calls for security reasons, to maintain a record and to ensure that you receive courteous and efficient service. You consent in advance to any such recording. We need not remind you of our recording before each phone conversation.

To provide you with the best possible service in our ongoing business relationship for your account we may need to contact you about your account from time to time by telephone, text messaging or email. However, we must first obtain your consent to contact you about your account because we must comply with the consumer protection provisions in the federal Telephone Consumer Protection Act of 1991 (TCPA), CAN-SPAM Act and their related federal regulations and orders issued by the Federal Communications Commission (FCC).
- Your consent is limited to this account, and as authorized by applicable law and regulations.
- Your consent does not authorize us to contact you for telemarketing purposes (unless you otherwise agreed elsewhere).

With the above understandings, you authorize us to contact you regarding this account throughout its existence using any telephone numbers or email addresses that you have previously provided to us or that you may subsequently provide to us.

This consent is regardless of whether the number we use to contact you is assigned to a landline, a paging service, a cellular wireless service, a specialized mobile radio service, other radio common carrier service or any other service for which you may be charged for the call. You further authorize us to contact you through the use of voice, voice mail and text messaging, including the use of pre-recorded or artificial voice messages and an automated dialing device.

If necessary, you may change or remove any of the telephone numbers or email addresses at any time using any reasonable means to notify us.

**45. Claim of Loss.** If you claim a credit or refund because of a forgery, alteration, or any other unauthorized withdrawal, you agree to cooperate with us in the investigation of the loss, including giving us an affidavit containing whatever reasonable information we require concerning your account, the transaction, and the circumstances surrounding the loss. You will notify law enforcement authorities of any criminal act related to the claim of lost, missing, or stolen checks or unauthorized withdrawals. We will have a reasonable period of time to investigate the facts and circumstances surrounding any claim of loss. Unless we have acted in bad faith, we will not be liable for special or consequential damages, including loss of profits or opportunity, or for attorneys' fees incurred by you.

You agree that you will not waive any rights you have to recover your loss against anyone who is obligated to repay, insure, or otherwise reimburse you for your loss. You will pursue your rights or, at our option, assign them to us so that we may pursue them. Our liability will be reduced by the amount you recover or are entitled to recover from these other sources.

**46. Early Withdrawal Penalties (and involuntary withdrawals).** We may impose early withdrawal penalties on a withdrawal from a time account even if you don't initiate the withdrawal. For instance, the early withdrawal penalty may be imposed if the withdrawal is caused by our setoff against funds in the account or as a result of an attachment or other legal process. We may close your account and impose the early withdrawal penalty on the entire account balance in the event of a partial early withdrawal. See your notice of penalty for early withdrawals for additional information.

**47. Resolving Account Disputes.** We may place an administrative hold on the funds in your account (refuse payment or withdrawal of the funds) if it becomes subject to a claim adverse to (1) your own interest; (2) others claiming an interest as survivors or beneficiaries of your account; or (3) a claim arising by operation of law. The hold may be placed for such period of time as we believe reasonably necessary to allow a legal proceeding to determine the merits of the claim or until we receive evidence satisfactory to us that the dispute has been resolved. We will not be liable for any items that are dishonored as a consequence of placing a hold on funds in your account for these reasons.

**48. Subaccount Organization.** On checking accounts, federal regulations allow the bank to create transaction and savings sub-accounts which exist only on the books of the bank and which allow the bank to make transfers at the close of each working day. This puts the bank in a more favorable position concerning reserve requirements and ultimately allows us to maintain the most competitive pricing on your checking account. The activity of the sub-accounts will not be reflected on your bank statement and will not affect your account balance or the interest, fees and features of your checking account.

**49. Unlawful Internet Gambling Notice.** Restricted transactions as defined in *Federal Reserve Regulation GG* are prohibited from being processed through this account or relationship. Restricted transactions generally include, but are not limited to, those in which credit, electronic fund transfers, checks, or drafts are knowingly accepted by gambling businesses in connection with the participation by others in unlawful Internet gambling.

**50. Security Interest.** In addition to the rights of setoff which we have under this Agreement, you hereby grant to us a security interest in the account to secure payment of any obligation which you now owe us or which you may owe us at any time in the future, including your obligation to pay our attorneys' fees and expenses and your obligation to indemnify us as provided elsewhere in this Agreement. When any such obligation is due and payable to us, we may pay such obligation, or any part thereof, from the account without prior notice to you, and we will not be liable for the dishonor of any item or order which results from such exercise of our security interest. If the account has any pay-on-death beneficiary, the interests of such beneficiary shall be junior to our security interest and shall be subject to our right of setoff, even if we do not exercise our security interest or right of setoff until after your death.

**51. Effect of Termination or Amendment.** Termination of the account, whether by us or by you, does not relieve you of any obligation you may then owe us. We may accept deposits to the account after it has been closed in order to collect any deficit balance, and such acceptance will not constitute reinstatement of the account. Your use of the account after we give you notice of any amendment to this Agreement constitutes your acceptance of such amendment. No amendment of this Agreement is enforceable against us unless it is in writing and we have authored the writing or have signed it through an employee having authority to do so, such as a regional president. No practice or course of dealing in connection with the account which is at variance with this Agreement shall constitute a modification or amendment of this Agreement.

**52. Governing Law; Process; Representatives.** With regard to any account established online, this Agreement is governed by the laws of Mississippi and by federal law and regulation. Otherwise, this Agreement is governed by the laws of the state of the location of our branch identified on the signature page and by federal law and regulation. Notwithstanding this, we may honor any levy, attachment, garnishment, execution, subpoena, court order, administrative order (including child support order) or other legal process which names you or which encompasses you, the account or any tax identification number associated with the account, regardless of whether we are subject to the jurisdiction of the issuer of such, regardless of in which state such is served on us and regardless of how such is served on us. We are not required to raise any defense in your behalf. We may also comply with the directions of any executor, administrator, conservator, guardian, receiver, bankruptcy trustee, attorney-in-fact or any other such representative purporting to have authority over the account who furnishes us with apparently authentic copies of documents which confer such authority. We may refuse to deal with any such representative in our sole discretion, and we will not be liable to you for such refusal. You agree that we may place temporary or permanent holds on the balance of the account related to or otherwise in

response to any such process or authority and that we shall be fully protected in doing so, even if we later determine that such process or authority is inapplicable to the account. YOU AGREE THAT WE WILL NOT BE LIABLE TO YOU OR TO ANY OTHER PERSON FOR ACTING OR NOT ACTING ON ANY SUCH PROCESS OR FOR ACTING OR NOT ACTING ON THE DIRECTIONS OF ANY SUCH REPRESENTATIVE OR FOR PLACING OR NOT PLACING TEMPORARY OR PERMANENT HOLDS, AND YOU AGREE TO INDEMNIFY US, OUR DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS FROM AND AGAINST ANY AND ALL CLAIMS ARISING FROM OR IN ANY WAY RELATING TO SUCH ACTION OR INACTION.

**53. Indemnification By Fiduciary.** IF THE ACCOUNT IS A FIDUCIARY ACCOUNT (INCLUDING, BUT NOT LIMITED TO, AN ACCOUNT USED AS A CUSTODIAL ACCOUNT OR AS A REPRESENTATIVE PAYEE ACCOUNT TO RECEIVE PAYMENTS FROM THE SOCIAL SECURITY ADMINISTRATION OR ANY OTHER GOVERNMENTAL PAYOR), YOU, THE FIDUCIARY, AGREE IN YOUR INDIVIDUAL CAPACITY TO INDEMNIFY US AND HOLD US HARMLESS FROM ANY LOSS WE INCUR IN CONNECTION WITH THE ACCOUNT, WHETHER RESULTING FROM OVERDRAFT, ERROR IN YOUR FAVOR, RECLAMATION BY ANY GOVERNMENTAL PAYOR, ANY DISPUTE WITHIN THE SCOPE OF THE "ACCOUNT DISPUTE; INDEMNITY; LIMITATION ON LIABILITY" SECTION BELOW OR ANY OTHER REASON. IN THE EVENT OF ANY SUCH LOSS, WE MAY ENFORCE THE FOREGOING INDEMNITY BY SETTING OFF THE AMOUNT OF SUCH LOSS AGAINST (OR BY EXERCISING ANY SECURITY INTEREST WE MAY HAVE IN) ANY OTHER ACCOUNT WITH US IN WHICH YOU, THE FIDUCIARY, HAVE AN INTEREST (UNLESS YOUR INTEREST IN SUCH ACCOUNT IS ONLY AS A FIDUCIARY), AND WE WILL NOT BE LIABLE TO YOU OR TO ANYONE ELSE FOR THE DISHONOR OF ANY ITEM OR ORDER ON SUCH OTHER ACCOUNT WHICH RESULTS FROM SUCH SET-OFF OR EXERCISE OF OUR SECURITY INTEREST.

**54. Arbitration.** IF THE ACCOUNT IS A COMMERCIAL PURPOSE ACCOUNT, THEN YOU AGREE THAT ANY CLAIM, DISPUTE OR CONTROVERSY BY EITHER YOU OR US AGAINST THE OTHER, OR AGAINST THE EMPLOYEES, AGENTS OR ASSIGNS OF THE OTHER, ARISING FROM OR RELATING IN ANY WAY TO THIS AGREEMENT, THE ACCOUNT OR ANY TRANSACTION, INCLUDING CLAIMS REGARDING THE APPLICABILITY OF THIS ARBITRATION CLAUSE OR THE VALIDITY OF ALL OR ANY PART OF THIS AGREEMENT, SHALL BE RESOLVED BY BINDING ARBITRATION BY THE NATIONAL ARBITRATION FORUM, UNDER THE CODE OF PROCEDURE IN EFFECT AT THE TIME THE CLAIM IS MADE OR FILED. RULES AND FORMS OF THE NATIONAL ARBITRATION FORUM MAY BE OBTAINED AND CLAIMS MAY BE FILED AT ANY NATIONAL ARBITRATION FORUM OFFICE, www.ARBITRATION-FORUM.com OR POST OFFICE BOX 50191, MINNEAPOLIS, MINNESOTA 55405, TELEPHONE 1-800-474-2371. ANY ARBITRATION HEARING AT WHICH YOU APPEAR WILL TAKE PLACE IN THE CITY WHICH IS THE LOCATION OF OUR BRANCH AT WHICH THE ACCOUNT WAS OPENED. THIS ARBITRATION AGREEMENT IS MADE PURSUANT TO A TRANSACTION INVOLVING INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT, 9 U.S.C. SECTIONS 1-16. JUDGMENT UPON ANY ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH A COURT AND/ OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS, BUT EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST NOW BE RESOLVED THROUGH ARBITRATION.

**55. Mandatory Dispute Resolution Agreement.** If you have a concern, dispute or Claim (as defined below), we hope to resolve it as quickly and easily as possible. You agree to first discuss it with one of our employees so that your concern, dispute or claim can hopefully be resolved quickly. If our employee is unable to resolve your concern, dispute or claim, you agree to use the mandatory dispute resolution procedures described in this MANDATORY DISPUTE RESOLUTION AGREEMENT. Our goal is to resolve your concern, dispute or claim to your satisfaction before you or we incur legal costs or expenses unnecessarily. "Claim" is defined as any claim, dispute or controversy, whether based upon contract, tort, intentional, negligent or otherwise, constitutional, by statute, common law, or in equity (whether pre-existing, present or future), including an initial claim, counter-claim, cross-claim or third-party claim, arising from or relating to: (i) the account, (ii) any product, fee, or service relating to the account (e.g., internet banking, payment/ access devices, overdraft protection, direct deposit, etc.), (iii) the marketing or advertising of the account or related products or services, (iv) this Agreement, (v) the MANDATORY DISPUTE RESOLUTION AGREEMENT in this Agreement, including the validity, enforceability, interpretation, scope, or application of the MANDATORY DISPUTE RESOLUTION AGREEMENT, (vi) the enforceability of the arbitration agreement pertaining to commercial accounts, and (vii) any other agreement or instrument relating to the account or any related product or service (whether one or

more, the "Claim"). (a) In the event of any Claim or dispute asserted by you against us, the parties agree to use their best efforts to settle the Claim. As a condition precedent to the filing of any arbitration or action against using any court or obtaining any remedy at law or in equity, at least 45 days before filing any lawsuit, administrative proceeding (an Action) or in the case of a commercial account, an arbitration, you must deliver to us a written notice of your Claim reasonably describing the injury suffered, and the relief you seek from us. (b) Within 45 days after you deliver the demand (notice) of your Claim to us, we may make a written offer of settlement to resolve the Claim. If you reject or do not respond to our offer of settlement, we may, in any later Action or arbitration concerning the Claim, file the written offer of settlement and an affidavit concerning your rejection or lack of response to the offer for any permissible purpose. If the court or administrative judge or arbitrator (jointly "court") finds that the relief offered was sufficient to compensate you for your actual damages, you agree that you will not seek or accept any additional damages or attorneys' fees or costs for the Claim. This means that if we offered you a fair settlement, and you rejected it, you will not recover more than the fair settlement. All written offers of settlement as described in this subsection shall be presumed to be offered without any admission of liability, fault or other prejudice in the hope of compromise of a disputed matter. (c) Any Claim you may have against us will not expire during the dispute resolution period. If the 45-day dispute resolution period would result in the expiration of the statute of limitations for any of your claim, then the applicable statute of limitations shall be tolled during such 45-day period. (d) You may seek emergency relief. If you seek temporary injunctive relief to redress or prevent an immediate and irreparable injury, loss, or damages, then the Demand is not required, but we still may make the offer provided for in subsection (b) within 45 days after service of the request for temporary injunctive relief. (e) If applicable, and provided you have given the notice referred to above to allow us to make an offer to resolve your Claim, you may assert your Claim through pending litigation or arbitration if your Claim involves a commercial account. If you assert your Claim through a counterclaim in pending litigation, a notice of the Claim is not required, but we still may make the offer provided for in subsection (b) within 45 days after service of the counterclaim.(f) Even if our banking relationship ends, we still will try to resolve your Claim. This MANDATORY DISPUTE RESOLUTION AGREEMENT shall survive the termination of this Agreement.

**56. Notice Procedures.** A party who intends to send a notice of a Claim, file a lawsuit or institute an arbitration proceeding must first send to the other, by certified mail (via the U.S. Postal Service) or a nationally-recognized courier (e.g., FedEx, UPS, etc.), a written Notice of Claim ("Notice"). The Notice from us to you will be sent to the most recent address we have on file for you. The Notice from you to us should be addressed to: BancorpSouth Bank Attn: Legal Department/Dispute Resolution 201 S. Spring Street, 4th Floor Tupelo, MS 38804 The Notice must: (a) describe the nature and basis of Claim; and (b) set forth the specific relief sought. The parties agree that your obligation to provide the Notice and the expiration of the dispute resolution period (as identified in the MANDATORY DISPUTE RESOLUTION AGREEMENT) shall be a condition precedent to you filing an Action or an arbitration in the case of a commercial account.

**57. ACH and Wire Transfers.** The terms used in this section have the meaning given to them in Article 4A of the Uniform Commercial Code - Funds Transfers (UCC 4A). This section will generally not apply to you if you are a consumer. However, even if you are a consumer, this section will apply to that part of any funds transfer that is conducted by Fedwire. This section is subject to UCC 4A as adopted in the state in which you have your deposit with us. This agreement is also subject to all clearing house association rules, rules of the Board of Governors of the Federal Reserve System and their operating circulars. If any part of this agreement is determined to be unenforceable, the rest of the agreement remains effective. This agreement controls funds transfers unless supplemented or amended in a separate written agreement signed by us. This agreement does not apply to a funds transfer if any part of the transfer is governed by the Electronic Fund Transfer Act of 1978 (EFTA), except this agreement does apply to a funds transfer that is a remittance transfer as defined in EFTA unless the remittance transfer is an electronic fund transfer as defined in EFTA. Funds Transfer. A funds transfer is the transaction or series of transactions that begin with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. A funds transfer is completed by the acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's order. You may give us a payment order orally, electronically, or in writing, but your order cannot state any condition to payment to the beneficiary other than the time of payment. Authorized Account. An authorized account is a deposit account you have with us that you have designated as a source of payment of payment orders you issue to us. If you have not designated an authorized account, any account you have with us is an authorized account to the extent that payment of the payment order is not inconsistent with the use of the account. Acceptance of Your Payment Order. We are not obligated to accept any payment order that you give us, although we normally will accept your payment order if you have a withdrawable credit in an authorized account sufficient to cover the order. If we do not execute your payment order, but give you notice of our rejection of your payment order after the execution date or give you no notice, we are not liable to pay you as restitution any interest on a withdrawable credit in a non-interest-bearing account. Cutoff Time. If we do not receive your

payment order or communication canceling or amending a payment order before our cutoff time on a funds transfer day for that type of order or communication, the order or communication will be deemed to be received at the opening of our next funds transfer business day. Payment of Your Order. If we accept a payment order you give us, we may receive payment by automatically deducting from any authorized account the amount of the payment order plus the amount of any expenses and charges for our services in execution of your payment order. We are entitled to payment on the payment or execution date. Unless your payment order specifies otherwise, the payment or execution date is the funds transfer date we receive the payment order. The funds transfer is completed upon acceptance by the beneficiary's bank. Your obligation to pay your payment order is excused if the funds transfer is not completed, but you are still responsible to pay us any expenses and charges for our services. However, if you told us to route the funds transfer through an intermediate bank, and we are unable to obtain a refund because the intermediate bank that you designated has suspended payments, then you are still obligated to pay us for the payment order. You will not be entitled to interest on any refund you receive because the beneficiary's bank does not accept the payment order. Security Procedure. As described more fully in a separate writing, the authenticity of a payment order or communication canceling or amending a payment order issued in your name as sender may be verified by a security procedure. You affirm that you have no circumstances which are relevant to the determination of a commercially reasonable security procedure unless those circumstances are expressly contained in a separate writing signed by us. You may choose from one or more security procedures that we have developed, or you may develop your own security procedure if it is acceptable to us. If you refuse a commercially reasonable security procedure that we have offered you, you agree that you will be bound by any payment order issued in your name, whether or not authorized, that we accept in good faith and in compliance with the security procedure you have chosen. Duty to Report Unauthorized or Erroneous Payment. You must exercise ordinary care to determine that all payment orders or amendments to payment orders that we accept that are issued in your name are authorized, enforceable, in the correct amount, to the correct beneficiary, and not otherwise erroneous. If you discover (or with reasonable care should have discovered) an unauthorized, unenforceable, or erroneously executed payment order or amendment, you must exercise ordinary care to notify us of the relevant facts. The time you have to notify us will depend on the circumstances, but that time will not in any circumstance exceed 14 days from when you are notified of our acceptance or execution of the payment order or amendment or that your account was debited with respect to the order or amendment. If you do not provide us with timely notice you will not be entitled to interest on any refundable amount. If we can prove that you failed to perform either of these duties with respect to an erroneous payment and that we incurred a loss as a result of the failure, you are liable to us for the amount of the loss not exceeding the amount of your order.Identifying Number. If your payment order identifies an intermediate bank, beneficiary bank, or beneficiary by name and number, we and every receiving or beneficiary bank may rely upon the identifying number rather than the name to make payment, even if the number identifies an intermediate bank or person different than the bank or beneficiary identified by name. Neither we nor any receiving or beneficiary bank have any responsibility to determine whether the name and identifying number refer to the same financial institution or person. Record of Oral or Telephone Orders. You agree that we may, if we choose, record any oral or telephone payment order or communication of amendment or cancellation. Notice of Credit. If we receive a payment order to credit an account you have with us, we are not required to provide you with any notice of the payment order or the credit. Provisional Credit. You agree to be bound by the automated clearing house association operating rules that provide that payments made to you or originated by you by funds transfer through the automated clearing house system are provisional until final settlement is made through a Federal Reserve Bank or otherwise payment is made as provided in Article 4A-403(a) of the Uniform Commercial Code. Refund of Credit. You agree that if we do not receive payment of an amount credited to your account, we are entitled to a refund from you in the amount credited and the party originating such payment will not be considered to have paid the amount so credited. Amendment of Funds Transfer Agreement. From time to time we may amend any term of this agreement by giving you reasonable notice in writing. We may give notice to anyone who is authorized to send payment orders to us in your name, or to anyone who is authorized to accept service. Cancellation or Amendment of Payment Order. You may cancel or amend a payment order you give us only if we receive the communication of cancellation or amendment before our cutoff time and in time to have a reasonable opportunity to act on it before we accept the payment order. The communication of cancellation or amendment must be presented in conformity with the same security procedure that has been agreed to for payment orders. Intermediaries. We are not liable for the actions of any intermediary, regardless of whether or not we selected the intermediary. We are not responsible for acts of God, outside agencies, or nonsalaried agents. Limit on Liability. You waive any claim you may have against us for consequential or special damages, including loss of profit arising out of a payment order or funds transfer, unless this waiver is prohibited by law. We are not responsible for attorney fees you might incur due to erroneous execution of payment order. Erroneous Execution. If we receive an order to pay you, and we erroneously pay you more than the amount of the payment order, we are entitled to recover from you the amount in excess of the amount of the payment order, regardless of whether you may have some claim to the excess amount against the originator of the order. Objection to Payment. If we give you a notice that reasonably identifies a payment order issued

in your name as sender that we have accepted and received payment for, you cannot claim that we are not entitled to retain the payment unless you notify us of your objection to the payment within one year of our notice to you.

## 58. Electronic Disclosures and Notices.

This disclosure describes the process that must occur before we can provide you with electronic disclosures and notices (such as by email or website). It also describes your rights in the event you consent to receiving electronic disclosures and notices. We must make an electronic request for your consent. Then you must give your consent electronically in response to our request. You understand prior to giving your consent that: 1. Your consent applies only to disclosures and notices regarding your deposit or share accounts, including your periodic account statements; 2. Unless you consent, you have the right to receive all required disclosures in paper or non-electronic form; 3. Even after consent, if you want to receive a paper copy of the disclosure in addition to the electronic disclosure you can obtain one free of charge by calling us; 4. You can withdraw your consent at any time by calling us; and 5. You must promptly provide us with the information (such as an email address) needed to communicate with you electronically and update us as to any changes in such information by calling us. We reserve the right to provide any disclosures or notices in writing, rather than electronically. Except as otherwise provided by law or in other agreements, you can give us all notices regarding your deposit or share accounts or your periodic statements, except for stop payment orders, by email using our then current email address, regardless of anything in this agreement to the contrary; however, we reserve the right to have any notices confirmed in writing upon our request.

## 59. Notice Regarding Inaccurate Information.

**As a participant in the consumer reporting system, we furnish information about our experience with you to consumer reporting agencies. These reports allow us to make credit and other opportunities available to you. If you believe that we have furnished information to a consumer reporting agency that is inaccurate please notify us and identify the specific information that is inaccurate:**

888-797-7711 or visit your local BancorpSouth office

## 60. International ACH Transactions.

Financial institutions are required by law to scrutinize or verify any international ACH transaction (IAT) that they receive against the Specially Designated Nationals (SDN) list of the Office of Foreign Assets Control (OFAC). This action may, from time to time, cause us to temporarily suspend processing of an IAT and potentially affect the settlement and/or availability of such payments.

## 61. Notice of Negative Information.

Federal law requires us to provide the following notice to customers before any negative information may be furnished to a nationwide consumer reporting agency. Negative information includes information concerning delinquencies, overdrafts or any form of default. This notice does not mean that we will be reporting such information about you, only that we may report such information about customers that have not done what they are required to do under our agreement. After providing this notice, additional negative information may be submitted without providing another notice.

**We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.**